### In the Matter of John Thomas WILSON, Amanda Paige Wilson, Debtors.

### John Thomas Wilson, Plaintiff,

### v.

### State of Georgia, Department of Medical Assistance, Defendant.

**Bankruptcy No. 99–21535.
Adversary No. 00–2012.**

United States Bankruptcy Court,
S.D. Georgia,
Brunswick Division.

July 17, 2000.

William Orange, Brunswick, Georgia, for Plaintiff.

Oscar B. Fears, III, Assistant Attorney General, Atlanta, Georgia, for Defendant.

### ORDER ON MOTION TO DISMISS

LAMAR W. DAVIS, Jr., Bankruptcy Judge.

Plaintiff, John Thomas Wilson, is a debtor having filed for relief under Chapter 13 on December 10, 1999. Debtor is a practicing dentist who provides services to Medicaid patients in the Southeast Georgia area and is an authorized Medicaid provider licensed by the State of Georgia, Department of Medical Assistance. Based upon investigations which are underway into his billing practices and reimbursement requests from the State of Georgia, payments reimbursing him for services rendered were interrupted by the State. He filed this adversary proceeding seeking injunctive relief to prohibit the State of Georgia from withholding funds for patients which he has treated in the postpetition period. The State filed a Motion to Dismiss the adversary proceeding relying on the Eleventh Amendment to the United States Constitution which it believes grants it sovereign immunity from the processes of this Court in considering or extending injunctive relief in favor of the Debtor.

For the purposes of this Motion it was stipulated that a proof of claim has been filed by another agency for the State of Georgia (the Department of Revenue), but not by this particular Defendant agency;

that Medicaid is a federal program administered by the State of Georgia; that the source of funds for payment to medical providers are combined state and federal funds; that the Debtor has outstanding claims for approximately $62,000.00 in pre-petition services and post-petition services of $27,000.000. The Debtor has not been terminated as a Medicaid provider, but was converted to a method of reimbursement known as "prepayment review" which involves a higher level of review and investigation prior to any reimbursement being made. It is acknowledged that the Debtor, based on a complete review of services provided post-petition, has earned approximately $10,000.00 in undisputed post-petition services. However, these funds are being withheld by the State because of its belief that in the pre-petition era the Debtor was guilty of fraud, misrepresentation, or other acts which entitle the State to set off or recoupment of the sums otherwise earned by the Debtor in the post-petition period.

The issue presented to the Court is whether the Eleventh Amendment sovereign immunity of the State of Georgia has been waived (a) by the filing of proofs of claim in this case by an agency of the state other than the Department of Medical Assistance, and/or (b) by the act of the Department of Medical Assistance in withholding post-petition earnings of the Debtor.

### CONCLUSIONS OF LAW

The State of Georgia, Department of Medical Assistance (hereinafter referred to as the "State") filed a Motion to Dismiss this adversary proceeding asserting that the Eleventh Amendment grants it sovereign immunity and bars this Court from adjudicating this matter. Debtor asserts

that the Court has jurisdiction over this matter because the Medicaid program is a federal program and, therefore, this adversary proceeding raises a federal question. Debtor asserts that the funds are being withheld by the State pursuant to 42 C.F.R. § 455.23 which authorizes the State Medicaid agency to withhold Medicaid payments in cases of fraud or willful misrepresentation under the Medicaid program.[1] At the hearing on the Motion to Dismiss, Debtor asserted that the State waived sovereign immunity because the State of Georgia, Department of Revenue, filed a proof of claim in the case.

The root of the sovereign immunity doctrine dates back to the common law proposition that the King could do no wrong. Sovereign immunity "... precludes [a] litigant from asserting an otherwise meritorious cause of action against a sovereign or a party with sovereign attributes unless [the] sovereign consents to suit." *Black's Law Dictionary* 1252 (5th ed.1979). The ratification of the Eleventh Amendment in 1798 extended the protection of sovereign immunity to the states. The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. CONST. amend. XI. Although the Eleventh Amendment, by its own terms, does not explicitly protect states against suits by its own citizens, the Supreme Court expanded the interpretation of the Eleventh Amendment to provide such protection. *See Hans v. Louisiana*, 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890); *Ford Motor Co. v. Dep't of Treasury of State of Indiana*,

---

1. 42 C.F.R. § 455.23 provides in part:
   (a) Basis for withholding. The State Medicaid agency may withhold Medicaid payments, in whole or in part, to a provider upon receipt of reliable evidence that the circumstances giving rise to the need for a withholding of payments involve fraud or willful misrepresentation under the Medicaid program. The State Medicaid agency may withhold payments without first notifying the provider of its intention to withhold such payments. A provider may request, and must be granted, administrative review where State law so requires.

323 U.S. 459, 65 S.Ct. 347, 89 L.Ed. 389 (1945).

■ In view of the protections afforded by the Eleventh Amendment, there are limited circumstances wherein an individual may file suit against a state. These situations are: 1) where Congress authorizes such a suit pursuant to a valid exercise of its power; 2) pursuant to the *Ex Parte Young* doctrine; or 3) a state may waive sovereign immunity by consenting to a suit. The Court will examine each of these circumstances separately.

Section 106(a) of the Bankruptcy Code represents Congress' intent to abrogate sovereign immunity as to a governmental unit under specific circumstances. 11 U.S.C. § 106(a). This code section has been the subject of a vast number of opinions in the wake of the Supreme Court's decision in the case of *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996). In *Seminole*, the Supreme Court found that Congress's abrogation of state Eleventh Amendment immunity under the Indian Gaming Regulatory Act was unconstitutional. *Id.* Although this Court has previously considered the impact of the *Seminole Tribe* decision on Section 106(a), the Court does not need to conduct such analysis in this case because the issue presented to the Court addresses the waiver of sovereign immunity under 11 U.S.C. § 106(b) as the result of a claim having been filed by an agency of the State.

■ In cases where there has not been a waiver or abrogation of sovereign immunity, the *Ex Parte Young* doctrine provides a narrow exception to Eleventh Amendment immunity. The Supreme Court held in the case of *Ex Parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), that federal jurisdiction existed over a suit against a state official, where the state itself could not be sued in federal court, when the suit sought only prospective injunctive relief in order to end a continuing violation of federal law. *See*

*Matter of Guiding Light Corp.*, 213 B.R. 489, 491 (Bankr.E.D.La.1997). In examining the *Ex Parte Young* doctrine, one court stated:

> The *Young* doctrine carves out a "necessary exception" to Eleventh Amendment immunity to "ensure[ ] that state officials do not employ the Eleventh Amendment as a means of avoiding compliance with federal law." *Puerto Rico Aqueduct & Sewer Authority v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 113 S.Ct. 684, 688, 121 L.Ed.2d 605 (1993). The doctrine is based on the theory (or legal fiction) that when a state officer violates federal law in the course of discharging his or her duties to the state, he or she is acting *ultra vires* and therefore not as the state or its agent. On this basis, *Young* held that the Eleventh Amendment does not apply to a suit against an officer of the state to enjoin the officer's continuing violation of federal law. But the *Young* exception is narrow. Under it, a federal court's jurisdiction is limited to requests for prospective declaratory and injunctive relief.

*In re DeAngelis*, 239 B.R. 426, 431 (Bankr. D.Mass.1999) (other citations omitted). In the case at bar, Debtor has filed suit against the State of Georgia, Department of Medical Assistance which is a state agency. Debtor has not filed suit against an individual state official. Although Debtor requests injunctive relief, the Court finds that the *Young* exception does not apply to this case because the Debtor is seeking relief against an agency of the state, not an individual.

■ The third circumstance in which a state may be sued by an individual is when a state waives its Eleventh Amendment sovereign immunity and consents to the lawsuit. Such waivers are strictly construed and must be express and unequivocal. The Supreme Court stated, "we have held that a State will be deemed to have waived its immunity 'only where stated by the most express language or by such overwhelming implication from the text as

[will] leave no room for any other reasonable construction.'" *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 239, 105 S.Ct. 3142, 3146, 87 L.Ed.2d 171 (1985) (quoting *Edelman v. Jordan*, 415 U.S. 651, 673, 94 S.Ct. 1347, 1361, 39 L.Ed.2d 662 (1974)) (other citations omitted).

█ There are limitations on a state's waiver of immunity. The first limitation on waiver is to determine who has the authority, under the law of the state, to waive immunity for the state. The Constitution of the State of Georgia addresses the waiver of sovereign immunity in Article 1, Section 2, Paragraph 9 and provides:

(e) Except as specifically provided in this Paragraph, sovereign immunity extends to the state and all of its departments and agencies. The sovereign immunity of the state and its departments and agencies can only be waived by an Act of the General Assembly which specifically provides that sovereign immunity is thereby waived and the extent of such waiver.

(f) No waiver of sovereign immunity under this Paragraph shall be construed as a waiver of any immunity provided to the state or its departments, agencies, officers, or employees by the United States Constitution.

GA. CONST. art. 1, § 2, ¶ 9. In the case at bar, Debtor has not provided the Court with any evidence of an Act of the General Assembly that the State has waived sovereign immunity and consented to be a defendant in this adversary proceeding.

█ In the absence of an express waiver of sovereign immunity by the State of Georgia, the Court must examine the second limitation on the waiver of immunity and determine whether the filing a claim by Department of Revenue waived immunity for the Department of Medical Assistance pursuant to the Bankruptcy Code. Section 106(b) of the Bankruptcy

Code provides the following waiver provision:

A governmental unit that has filed a proof of claim in the case is deemed to have waived sovereign immunity with respect to a claim against such governmental unit that is property of the estate and that arose out of the same transaction or occurrence out of which the claim of such governmental unit arose.

11 U.S.C. § 106(b).[2] This section grants a limited waiver of sovereign immunity and is grounded in equitable principles as it would not be fair to allow a governmental unit to participate in the distributions of a bankruptcy case without being exposed to any liability. In the case of *Gardner v. State of New Jersey*, the Supreme Court stated, "[w]hen the State becomes the actor and files a claim against the [bankruptcy] fund it waives any immunity which it otherwise might have had respecting the adjudication of the claim." *Gardner v. State of N.J.*, 329 U.S. 565, 574, 67 S.Ct. 467, 472, 91 L.Ed. 504 (1947). Debtor asserts that the claim filed by the Department of Revenue constitutes a broad waiver of immunity and waives immunity for all other state agencies, including the defendant Department of Medical Assistance. The enactment of Section 106(b) in the 1994 Bankruptcy Reform Amendments essentially codified the *Gardner* rule but narrowed its application to permit only those suits against a state which arise out of the same transaction or occurrence as claim filed by the state in the bankruptcy case. *In re Straight*, 143 F.3d 1387, 1390 (10th Cir.1998).

█ Because a state's waiver of sovereign immunity must be express and unequivocal, Section 106(b) consists of three elements which the court must analyze to determine if the State waived sovereign immunity by participating in this bankruptcy case. 1 NORTON BANKR. L & PRAC. 2d § 14:9 (2000). The first element is that

**2.** The current Section 106(b) was the former Section 106(a) which was amended by the Bankruptcy Reform Act of 1994.

the waiver provision is limited to cases in which the governmental unit files a proof of claim. To determine if this element has been met, we must look to the definition of a "governmental unit" in the Bankruptcy Code. 11 U.S.C. § 101(27) states:

> In this title—"governmental unit" means United States; State; Commonwealth; District; Territory; municipality; foreign state; department, agency, or instrumentality of the United States (but not a United States trustee while serving as a trustee in a case under this title), a State, a Commonwealth, a District, a Territory, a municipality, or a foreign state; or other foreign or domestic government.

11 U.S.C. § 101(27). This definition of a governmental unit is broad and incorporates all of the agencies acting on a state's behalf. In the case at bar, the Department of Medical Assistance and the Department of Revenue are agencies of the State of Georgia and clearly fall within the definition of a governmental unit under Section 106(b). Therefore, the Court finds that the first element of Section 106(b) has been met.

The second element of Section 106(b) is to determine whether Debtor's claim against the Department of Medical Assistance is property of the estate. Section 541 of the Bankruptcy Code outlines what property is consider to be property of the estate. Specifically, Section 541(a)(7) provides:

> (a) The commencement of a case under section 301, 302, or 303 of this title creates an estate. Such estate is comprised of all the following property, wherever located and by whomever held:
>
> > (7) Any interest in property that the estate acquires after the commencement of the case.

11 U.S.C. § 541(a)(7). In this case, Debtor is seeking the return of funds and to enjoin the Department of Medical Assistance from withholding funds for which debtor has earned for services performed on patients post-petition. Debtor asserts that these funds are necessary to the completion of his Chapter 13 plan. The Court finds that these funds constitute property of the Debtor's bankruptcy estate. However, the fact that these funds are property of the estate is not a sufficient nexus to grant this Court jurisdiction over this proceeding under Section 106(b).

■ The third element is to determine whether the claim against the State of Georgia, Department of Medical Assistance arose out of the same transaction or occurrence out of which the claim of the Department of Revenue arose. Therefore, Debtor's claim against the Department of Medical Assistance must arise out of the same transaction or occurrence as the claim filed by the Department of Revenue. According to the legislative history, the analysis of the "same transaction or occurrence" in Section 106(b) is the same as would be used in determining whether the claim is a compulsory counterclaim under Rule 13(a) of the Federal Rules of Civil Procedure. 1 NORTON BANKR. L. & PRAC. 2d § 14:9 (2000). This Court analyzed the former Section 106(a) and compulsory counterclaim requirement in *In the Matter of TPI Int'l Airways, Inc.*:

> Under Rule 13, a compulsory counterclaim is a claim which "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim." Binding precedent requires this Court to employ the "logical relationship test" in establishing whether or not a claim is a compulsory counterclaim. Under the logical relationship test the Court should consider the following:
>
> Whether the essential facts of the various claims are so logically connected that considerations of judicial economy and fairness dictate that all issues should be resolved in one lawsuit. A logical relationship exists when the counterclaim arises from the same aggregate set of operative facts as the initial claim, in that the same operative facts serve as the basis of both claims or

the aggregate core of facts upon which the claim rests activates additional legal rights otherwise dormant in the defendant.

*In the Matter of TPI Int'l Airways, Inc.,* 141 B.R. 512, 516 (Bankr.S.D.Ga.1992) (citations omitted). In applying this rule, courts look to the totality of the circumstances and determine whether the claims arise out of the same transaction or occurrence. The claim filed by the Department of Revenue was for income taxes for the 1995 and 1998 tax years. This adversary proceeding seeks recovery of monies withheld post-petition by the Department of Medical Assistance. Debtor filed the Chapter 13 petition on December 10, 1999. In applying the compulsory counterclaim standard, the Court cannot find that the Debtor's claim for return of post-petition monies is so logically related to the Department of Revenue's claim for pre-petition taxes that both matters should be resolved in one lawsuit. The Court finds that no logical relationship exists between the claims, therefore, the claims fail to meet the requirements of the test. I hold that these claims did not arise from the same transaction or occurrence. Accordingly, the claim filed by the State of Georgia, Department of Revenue, for the 1995 and 1998 tax years, does not constitute a waiver of immunity for the defendant De-partment of Medical Assistance in this adversary proceeding.[3]

One final consideration of the Court is to determine whether the State's withholding of funds triggers a waiver of sovereign immunity. First, Debtor argues that State participation in the Medicaid program, a federally funded program, is sufficient to constitute a waiver of sovereign immunity. The United States Supreme Court addressed this issue and stated that the "mere receipt of federal funds cannot establish that a State has consented to suit in federal court." *Atascadero State Hosp. v. Scanlon, supra,* at 246, 105 S.Ct. 3142 (citations omitted). This contention is overruled. Second, Debtor contends that by withholding approximately $10,000.00 in funds admittedly earned post-petition, the State has waived its immunity. Debtor relies on correspondence from the State asserting its intent to recoup post-petition earnings to compensate the State for pre-petition overpayments which may have been fraudulent. Under the pre-1994 version of Section 106 this argument might have prevailed because that statute required only that the State *have* a claim against the debtor. *See In re Kings Terrace Nursing Home and Health Related Facility,* 184 B.R. 200 (S.D.N.Y. 1995); *In re Martinez,* 196 B.R. 225 (D.P.R.1996). The 1994 amendments tightened the rule to require the *filing* of a

3. Debtor argues that the waiver of sovereign immunity is not restrictive and the filing of a claim waives immunity for all state agencies. Debtor relies on the Eleventh Circuit's decision of *In re Burke,* 146 F.3d 1313 (11th Cir.1998), wherein the Court stated: "we need not resolve this abrogation issue because assuming arguendo that the State of Georgia has Eleventh Amendment immunity and it has not been validly abrogated by Section 106(a), we conclude that in this case the State waived its sovereign immunity by filing a proof of claim in the debtors' bankruptcy proceedings." *Id.* at 1317. In *Burke,* which was a consolidated appeal of two adversary proceedings, the debtors sought relief against the Georgia Department of Revenue for violations of the automatic stay and discharge injunction. The Department of Revenue filed claims in each of the underlying bankruptcy cases. After acknowledging that a state may consent to a federal court's jurisdiction through its affirmative conduct, the Eleventh Circuit stated in footnote number 10, "the debtors' adversary action in the instant case involves the same state income taxes that the State of Georgia sought to recover by filing proofs of claim in the debtors' respective bankruptcy proceedings. Therefore, we conclude that the debtors' actions for violation of the automatic stay and discharge injunction 'arise out of the same transaction or occurrence' as the State's proofs of claim." *Id.* at 1318. Although not expressly relying on Section 106(b), the Eleventh Circuit conducted an analysis of the cases under the compulsory counterclaim standard and found only that claims filed by the same State agency met the standard to grant the Court jurisdiction over the proceeding.

claim. Since the State agency holding funds asserts, but did not file, a claim, no waiver occurred as held *supra,* page 439. Debtor's remedy to free these funds lies in State, not Federal, Court as a matter of constitutional law.

## *ORDER*

Pursuant to the foregoing Findings of Fact and Conclusions of Law, IT IS THE ORDER OF THIS COURT that the Motion to Dismiss filed by the State of Georgia, Department of Medical Assistance, is granted.